# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

DESIGN BASICS, LLC, and
CARMICHAEL & DAME DESIGN,
INC.,

      Plaintiffs,

vs.

SPAHN & ROSE LUMBER CO.,

      Defendant.

No. 19-CV-1015-CJW-MAR

**ORDER**

_____

This matter is before the Court on defendant's Motion for Partial Summary Judgment.  (Doc. 35).  Plaintiffs timely filed a resistance (Doc. 40) and defendant timely filed a reply (Doc. 44).  On January 8, 2021, the Court held a telephonic hearing on the motion and the parties presented oral arguments.  (Doc. 46).

For the following reasons, defendant's motion for partial summary judgment is **granted in part and denied in part**.

## I.     BACKGROUND

This case involves alleged infringements of copyrighted architectural works.  The following facts are undisputed unless otherwise noted.  The Court will discuss additional facts as they become necessary to its analysis.

Design Basics, LLC ("DB") is a Nebraska company engaged in creating, publishing, and licensing architectural plans and designs.  (Docs. 32, at 2; 35-5, at 1).  Carmichael & Dame Design, Inc. ("CDD") is a Texas corporation that is in the business of designing home plans to be licensed to builders and consumers.  (Doc. 35-5, at 1).  CDD and DB (collectively "plaintiffs") have overlapping ownership and all CDD's operations run through DB.  (*Id.*, at 2).  Spahn & Rose Lumber Company ("defendant")

is an Iowa corporation that markets, distributes, and sells lumber and building supplies. (*Id.*, at 1–2).

Since the early 1980s, DB has created residential home building plans and marketed its plans through catalogs, industry publications, marketing partners, and client-specific publications. (Doc. 45, at 1–2). DB also marketed its plans via a company website after internet marketing became viable in the mid-1990s. (*Id.*, at 7). DB's customers license the home plans for construction projects and for other purposes. DB owns the copyright to over 2,000 home designs. (Doc. 40-1, at 3).

Plaintiffs allege, but defendant disputes, that plaintiffs first became aware that defendant was infringing on their copyrighted architectural works in 2016 when plaintiffs discovered that defendant had copied three of their works. (Doc. 45, at 4–5). In late 2018, CDD sent a licensed investigator to defendant's Dubuque, Iowa location to further investigate possible copyright infringements. (*Id.*, at 5). Plaintiffs claim the investigator uncovered at least one additional copyright violation during his investigation. (*Id.*, at 5–6). The investigation led to formal discovery, the findings of which serve as the basis of plaintiffs' amended complaint here. (*Id.*, at 6).

Plaintiffs allege in their amended complaint that defendant "unlawfully copied seventeen (17) of their copyright protected works and contributed in the construction of infringing [houses] therefrom . . . by supplying the lumber and/or other construction materials to various builders." (Doc. 40, at 1–2). Plaintiffs' designs at issue here are DB's "2285 Prairie," "1380 Paterson," "8055 Autumn Hills," "2761 Mayberry," "2315 Harrisburg," "2245 Tyndale," "8089 Chandler Hills," "42060 Furyk," "8065 Hannifan Lane," "2311 Pinehurst," "1748 Sinclair," "42006 Haskell," "2332 Corinth," "8530 Calverton," "42035 Saffron," and "3010 Quimby," and CDD's "9207 Briar Manor."[1]

---

[1] Plaintiffs also list "2890 Jefferson" on page two of their resistance brief. (Doc. 40, at 2). Plaintiffs do not mention "2890 Jefferson" anywhere else in their responsive pleadings, including

2

(Docs. 35-5, at 3; 40, at 2). The parties do not dispute that the designs have valid copyrights. Plaintiffs raise their claims as copyright violations and as violations of the Digital Millennium Copyright Act ("DMCA"). (Doc. 32).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

---

in their summation of the remaining claims. (*Id.*, at 3–4). Thus, the Court will assume it was listed in error and will not include it in the Court's analysis.

(1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996). When considering a motion for summary

judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## III. DISCUSSION

Defendant's motion for partial summary judgment argues there is no genuine issue of material fact and that it is entitled to judgment on all but one of plaintiffs' infringement claims. (Doc. 35). Plaintiffs agree not to pursue several of their claims, but they resist summary judgment on the rest. (Doc. 40). The Court will first consider which of the original 17 claims remain before discussing the relevant law and its application to the claims here.

### A. Unresisted & Remaining Claims

Several of the designs are not substantially at issue here. First, defendant does not move for summary judgment on plaintiffs' infringement claims involving the "9207 Briar Manor" design. (Doc. 35-5, at 4). Second, defendant does not appear to seek summary judgment on any of plaintiffs' DMCA claims. (Docs. 35-5, at 4; 40, at 7 n.5).

Third, plaintiffs do not resist summary judgment on several of the designs. Plaintiffs state they will drop their infringement claims for the "2285 Prairie," "1380 Paterson," and "8055 Autumn Hills" designs because they "ha[ve] been unable to develop sufficient evidence to show that Defendant knowingly participated in designing the corresponding accused plans." (Doc. 40, at 2). Plaintiffs also state they are no longer pursuing their claims for the "42060 Furyk" design and the "3010 Quimby" design. (Id., at 2–3). Thus, the Court **grants** defendant's motion for summary judgment on the claims for these five designs.

After granting judgment of the above claims and excluding the "9207 Briar Manor" design on which defendant does not seek summary judgment, the remaining claims at issue here are as follows:

5

- Defendant's "3479-CG Dick Schlitz" and "3533-CG James Hermsen" infringe on DB's "2761 Mayberry"
- Defendant's "3499-CG Shawn Stackis" infringes DB's "2315 Harrisburg"
- Defendant's "3699-CG Jack Stackis 2 Story" infringes DB's "2245 Tyndale"
- Defendant's "UIC –Spec 1" infringes DB's "8089 Chandler Hills"
- Defendant's "JES-REMMERT (chad)-10" infringes DB's "8065 Hannifan Lane"
- Defendant's "JES-SHAHID-10" infringes DB's "2311 Pinehurst"
- Defendant's "JES-ZLOTKO (dolic)-10" infringes DB's "1748 Sinclair"
- Defendant's "CHAR-MICHAELS (dave)-11" infringes DB's "42006 Haskell"
- Defendant's "JES-KASIM (2-STORY)-11" infringes DB's "2332 Corinth"
- Defendant's "GRUNDY CTR HOUSING SPEC" infringes DB's "8530 Calverton"
- Defendant's "JES-WRIGHT (wendi)-13" infringes DB's "42035 Saffron"

(Doc. 40, at 3–4); *see also* (Doc. 35-5, at 3–4).

### B. Applicable Law

The Copyright Act states, in pertinent part:

[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
**(1)** to reproduce the copyrighted work in copies or phonorecords;
**(2)** to prepare derivative works based upon the copyrighted work;
**(3)** to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
**\*\*\***
**(5)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
**(6)** in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. Thus, the Copyright Act grants "a bundle of exclusive rights to the owner of the copyright." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S.

6

539, 546 (1985). The copyright owner's right to publish, copy, and distribute the work "vest in the author of an original work from the time of its creation." *Id.*

Included in the bundle of rights is the copyright owner's exclusive right to reproduce and distribute copies of the copyrighted work. 17 U.S.C. § 106. Thus, unauthorized reproduction or distribution of the work constitutes copyright infringement. To prove a copyright infringement a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 962–63 (8th Cir. 2005). Copying may be established in two ways. First, copying can be established by direct evidence, but "[d]irect evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006). Because direct evidence is rare, "copying can [also] be established by demonstration of access (by the alleged infringer) and substantial similarity (between the works at issue)." *Designworks Homes Inc. v. Columbia House of Brokers Realty, Inc.*, 421 F. Supp. 3d 838, 843 (W.D. Mo. 2019) (quoting *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941–42 (8th Cir. 1992)).

### C. *Analysis*

There is no genuine dispute that DB and CDD are the copyright owners of each of the designs at issue here, so the Court need not analyze the first prong of the copyright infringement test. The only question is whether defendant copied original elements of the works.

Defendant argues that plaintiffs "have produced no direct evidence of wrongful copying of the [DB] plans and must therefore rely on a dual showing of access and substantial similarity." (Doc. 35-5, at 9). Plaintiffs argue there is direct evidence that

defendant copied at least three of the copyrighted works. (Doc. 40, at 9). Plaintiffs also argue there is evidence of access and substantial similarity for each of the claims as well. The Court will first consider whether there is direct evidence of copying and will then discuss whether there is access and substantial similarity for the remaining claims.

### 1. Direct Evidence

Plaintiffs state that they established "direct copying for at least 3 of its Copyrighted Works." (Doc. 40, at 9). It is not entirely clear whether plaintiffs are arguing the "direct copying" equates to "direct evidence" or whether the copies are evidence of "access." Out of an abundance of caution, the Court will briefly consider whether the copies here are direct evidence.

"The Court of Appeals for the Eighth Circuit has observed the infringement element '[t]ypically . . . cannot be proven directly." *Designworks Homes*, 421 F. Supp. 3d at 843 (quoting *Moore*, 972 F.2d at 941); *see also* Alan Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement*, 90 COLUM. L. REV. 1187, 1194 (1990) ("[O]ne will recall the pious warning of the opening litany that direct evidence of copying is rarely, if ever available.") (citation and internal quotations excluded). There are, however, cases in which direct evidence proves copyright infringement. Direct evidence typically includes direct witness accounts of the physical act of copying, party admissions, and unusual errors that appear in both works. *Rottlund*, 452 F.3d at 732; *see also Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("[Defendant] admittedly gave a copy of the photograph to the Italian artisans with the explicit instruct that the work be copied.").

Plaintiffs do not explicitly state what the direct evidence of copying is here. Plaintiffs assert, however, that defendant "physically maintained several photocopies of DB's Works scanned or photocopied from DB's plan catalogues and printed off the Web." (Doc. 40, at 14). Specifically, plaintiffs assert there were photocopies of DB's

"42035 Saffron," "42006 Haskell," and "2332 Corinth" designs in defendant's design files. (*Id.*, at 15). According to plaintiffs, they have "caught Defendant red-handed." (*Id.*, at 21). Defendant qualifies or disputes each of these allegations. (Doc. 45, at 9–11).

Showing direct evidence is an extremely high bar to meet. Indeed, some commentators think only an outright admission of copying is enough to serve as direct evidence. *Latman*, *supra*, at 1192. Even under a broader understanding of what constitutes direct evidence, however, no direct evidence is shown here. Except for the Briar Manor design, which is not at issue here, there is neither an assertion nor evidence that any witnesses saw the copies being made. Nor are there party admissions that defendant copied the works or common errors that appear in both the originals and the copies. Thus, given the high standard that is required to show direct evidence, the Court cannot find any evidence or support in the record of direct evidence here.

### 2. Access

Defendant argues there is no direct or circumstantial evidence that it had access to the copyrighted works. (Doc. 35-5, at 9–13). According to defendant, plaintiffs' access claims rest on defendant obtaining three of plaintiffs' design catalogues in the 1990s and the existence of a DB website. (*Id.*, at 9). Defendant argues several of the designs at issue did not appear in any of the design catalogs they received and, although ten of the designs did appear in the catalogs, "there is no direct evidence that anyone at Spahn and Rose used or accessed the catalogs to create any of the designs at issue in this case." (*Id.*, at 12). As for the website argument, defendant states there is no evidence that it ever visited the DB website or that they viewed any of the plans at issue. (*Id.*, at 13).

Plaintiffs argue they distributed their works "far and wide throughout the residential home design and construction industry" through DB's plan catalogs, promotional mailers, and website. (Doc. 40, at 12). According to plaintiffs, "[a]s a DB

9

customer, Defendant had direct access to all these resources, and, as the evidence clearly shows, made considerable use of the same." (*Id.*, at 13). Specifically, plaintiffs argue defendant ordered several catalogs that contained several of the designs at issue here, made online purchases of the design plan, and physically maintained several scans or photocopies of plans from the catalogs and internet. (*Id.*, at 13–14). Plaintiffs argue all of this is evidence that defendant had access to the works. Tied up in plaintiffs' argument on the specific mediums in which its works were displayed is a broader argument that their works were widely disseminated, which can also be used as proof of access. (*Id.*, at 12).

A plaintiff "can establish access by showing that the defendants had an opportunity to view or copy his work." *Moore.*, 972 F.2d at 942 (internal quotations and citation omitted). A plaintiff must prove that "defendants had a 'reasonable possibility' of viewing [the] work," and the mere possibility of access is not enough. *Id.* (citing *Ferguson v. Nat'l Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). "Access may not be inferred based on conjecture and speculation." *Hoch v. MasterCard Int'l Inc.*, 284 F. Supp. 2d 1217, 1220 (D. Minn. 2003) (citing *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)).

Considering the facts and their inferences in the light most favorable to plaintiffs, the Court finds there is a question of material fact about whether defendant had access to the works. First, the catalogs provide evidence that defendant may have had access to several of the plans. Plaintiffs assert that since 1993, defendant ordered and received at least eight of DB's plan catalogs. (Docs. 40, at 13; 45, at 4). Defendant does not dispute receiving eight catalogs but qualifies that the eight copies consisted of only three different publications. (Doc. 45, at 4). In other words, defendant admits it had several copies of the same publications. Although plaintiffs claim the DB catalogs contained six of the works at issue here, defendant concedes the catalogs contained ten of the designs. (Docs.

35-5, at 11; 45, at 4). Defendant asserts the catalogs included the following designs: "2285 Prairie," "1380 Paterson," "8055 Autumn Hills," "2761 Mayberry," "2315 Harrisburg," "2245 Tyndale," "8089 Chandler Hills," "8065 Hannifan Lane," "2311 Pinehurst,"[2] and "1748 Sinclair." (Doc. 35-5, at 11). The record supports defendant's concession that ten of the designs were included in catalogs it received in the 1990s. (Docs. 35-3, at 34–38; 40-3, at 33–50; 40-4, at 1–2). These designs account for nearly two thirds of the remaining designs at issue here.[3] Thus, evidence in the record supports a finding that defendant had an opportunity, at least at some point, to view ten of the plans.

Defendant states that it is "highly unlikely" that catalogs ordered in the early to mid-1990s were still around decades later. (*Id.*). Defendant also states that something that was received by mail years ago is not strong evidence of access. (*Id.*). Unlikely as it may be, defendant has not removed all possibility that the catalogs are still around, and a disputed issue of fact remains. Defendant may be correct that the catalogs were discarded long before anybody relevant to this action could have viewed them. Defendant may also be able to argue at trial that even though they had the catalogs, nobody ever even looked at them. At the summary judgment stage, however, the Court cannot weigh the evidence based on when they were delivered and the possibility they were no longer

---

[2] The Court could not find the "2311 Pinehurst" design in the excerpted pages provided by either party. Because defendant asserted it was included in the file and because the Court must give all reasonable inferences in favor of the non-moving party, the Court will consider it included in the catalogs.

[3] Plaintiffs also state that defendant had a copy of their "2332 Corinth" design in their files that was a copy made from DB's catalog. (Doc. 40, at 14). Neither party asserts this design appeared in any of the three publications defendant ordered, nor can the Court find the design in the corresponding record. Thus, the Court will not consider this as evidence of access from the catalogs that defendant ordered.

around. The Court can only determine that there is evidence in the record that supports a finding that defendant may have had access to the plans in the catalogs.

Second, DB's website also provides some evidence of access that precludes summary judgment. Other courts around the country have found that mere existence of a website containing the copyrighted works is insufficient to show access. *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1107 (7th Cir. 2017) ("We decide only that the existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials."); *see also e.g.*, *Cain v. Hallmark Cards, Inc.*, Civ. No. 3:15-00351-JWD-EWD, 2016 WL 3189231, at *5-6 (M.D. La. June 6, 2016) (refusing to treat internet publication alone as sufficient to show the defendant accessed the website). The Court agrees with these other courts that have found the existence of a website alone cannot be evidence of access.

Here, however, plaintiffs provide additional evidence of access via the website beyond the mere existence of the website itself. For example, plaintiffs provide evidence that its promotional mailings directed recipients to visit the website to view designs. (Doc. 40, at 14). The Court is similarly skeptical that the mere existence of marketing material directing recipients to view a website shows any actual access of the website. Plaintiffs also provide evidence in the form of testimony from their Vice President of Business Development that defendant purchased two home plans from the website in 2000 and 2004. (Doc. 40-3, at 11). This is evidence that defendant visited the website on at least two occasions and raises the possibility that defendant actually visited the website.

This evidence, of course, does not definitely prove access. Indeed, defendant has provided counterevidence, namely testimony from DB's Vice President, that plaintiffs cannot identify who visited their website. Defendant also asserts it obtained the designs from another website and did not make purchases through the DB website. (Doc. 45, at

12

7–8). The existence of contrary evidence does not make a finding definitive. Instead, it shows there is a genuine issue of material fact about whether defendant viewed the website and thus accessed the works.

Plaintiffs assert each of the designs at issue here were displayed and maintained on the website. (Doc. 45, at 7). Defendant asserts that each of the plans at issue here were not available on the website and even if they were, there is no evidence when specific designs were uploaded. (*Id.*). There is evidence that these were all included on the website and there is evidence that defendant purchased plans in both 2000 and 2004, indicating they visited the website over an extended period. The contrasting evidence shows there is a genuine issue of material fact about whether defendant accessed the plans through the website.

Last, the Court must consider whether plaintiffs' promotional mailers can be evidence of defendant's access to the works. According to plaintiffs, they started distributing "no-cost magazine-styled promotional mailers to members of the residential construction industry" to defendant's geographical area starting in the early 1990s. (Doc. 40, at 12). Plaintiffs are essentially arguing that distributing the marketing materials "far and wide" can show access. (*Id.*). Defendant admits that plaintiffs did distribute promotional mailers but claim this is an insufficient basis to show access. (Doc. 44, at 4).

"A reasonable possibility of access may be established by evidence that prior to the creation of the infringing work, the copyrighted work was widely disseminated to the public." *Hoch*, 248 F. Supp. 2d at 1220. In determining whether something was widely distributed enough to evidence access, courts consider the number of copies distributed, the commercial success, and national performances or distribution. *Id.* The evidence here does not state how many copies were distributed, how wide of an area it was distributed to, and how effective the mailers were in soliciting business. Plaintiffs assert,

Case 2:19-cv-01015-CJW-MAR   Document 47   Filed 02/10/21   Page 13 of 21

and defendant agrees, that the mailers were sent regularly and systematically to the geographic area that includes defendant's business. The phrase regular and systematic indicates plaintiffs sent a significant number of mailings over the course of the years. Next, even if the mailers were not sent all over the country, there is no dispute that they were sent to the geographic area that includes defendant's business. Last, the record does not contain specific evidence of the overall successfulness of the mailers or the business, which weighs against including the mailers as evidence of access. Standing alone, the Court would likely find the mailers could not establish the level of access needed for plaintiffs to avoid summary judgment. But when there is additional evidence, as the case is here in the form of defendant's prior orders, the Court finds the mailers add supplemental evidence that could lead a jury to find defendant had access to the designs.

Thus, the Court finds there is a general issue of material fact whether defendant had access to the copyrighted works.

### 3. *Substantial Similarity*

The Court must next consider the question of substantial similarity. If defendant can show there is no genuine dispute that its designs and plaintiffs' designs are not substantially similar, then summary judgment must be granted in defendant's favor because there is no evidence of copying. If, however, there is a genuine issue of material fact about whether the designs are substantially similar, then defendant's motion must be denied.

The Eighth Circuit uses a two-step process to determine whether two works are substantially similar. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). The two-step process considers the substantial similarity "not only of the general ideas but of the expressions of those ideas as well." *Id.* "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Id.*

The extrinsic test depends on objective criteria, such as "the type of artwork involved, the materials used, the subject matter, and the setting for the subject." *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989) (citation omitted). "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120.

A court can properly determine substantial similarity as a matter of law. *See Nelson*, 873 F.2d at 1142. "Because substantial similarity is a close question of fact, however, summary judgment has traditionally been frowned upon." *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No, 8:03CV527, 2006 WL 994566, at *3 (D. Neb. Jan. 27, 2006) (citing *Atkins v. Fischer*, 331 F.3d 988, 994 (D.C. Cir. 2003)); *see also Hartman*, 833 F.2d at 121 ("Summary judgment is not favored, but when substantial similarity is the sole issue it is appropriate if the works are so dissimilar that 'reasonable minds could not differ as to the absence of substantial similarity in expression.").

Defendant provides "representative examples of the differences between Spahn and Rose's plans and [p]laintiffs' plans." (Doc. 35-5, at 13–28). As a backdrop to their comparisons, defendant also argues a copyright for a home design is "thin" and thus requires "very close" copying to show substantial similarity. (*Id.*, at 13).

The Court has analyzed each of plaintiffs' designs and compared it the defendant's designs based on the representations provided in the pleadings and record. The Court, however, need not analyze the similarities and differences between each plan in detail here because defendant's arguments for each plan contain common themes and general principles weighing in favor of finding that there is a genuine issue of fact about the similarity of the designs. Just as defendant's brief contains representative examples of the differences between the plans, the Court finds it useful to include some representative samples of its analysis that will help illustrate the Court's reasoning.

15

First, the architectural plans of defendant's Jack Stackis plan and DB's "2245 Tyndale" ("Tyndale") plan show both similarities and differences. From a front elevation view, both the Jack Stakis and the Tyndale have a similar shape, similar window and door placement, and a similar roof shape. The Jack Stakis plan includes a deck off the main floor and a three-car garage, whereas the Tyndale only has a two-car garage and does not appear to have a deck. The Jack Stakis floor plan also shows that it has a larger square footage, has a bathtub on the second flood, and includes two bedrooms on the main floor. (Docs. 35-5, at 19; 35-3, at 88–91). The Tyndale only has one bedroom on the main floor and no bathtub in the second-floor bathroom. (Docs. 35-5, at 19; 35-3, at 88–91). Plaintiffs' employee, Carl Cuozzo ("Cuozzo"), testified about several other differences, including the placement of linen closets, dining room, and size of bathrooms. (Doc. 35-5, at 19).

Second, the architectural plans of defendant's JES-Remmert (chad)-10 plan ("Remmert") and DB's "8605 Hannifan Lane" plan also show both similarities and differences. (Docs. 35-5, at 21–22; 35-3, at 100–03). Again, the two designs have similar shapes, have similar placement of windows and doors, and use similar building materials. (Doc. 35-3, at 100–03). But, as defendant points out, there are some differences including a window over the garage on the Hannifan Lane plan, shutters on the windows of the Remmert plan, the absence of decorative brickwork on part of the Remmert plan, different room placements and sizes, and different features of the master suites. (*Id.*).

Defendant's analysis of the other designs is similar and notes, for example, differences in square footage, room placement, roof designs, and garage size. All the descriptions are supported by elevation and floor plans in the record and nearly all the descriptions are supported by Cuozzo's testimony. Defendant does not appear to argue that the plans are dissimilar under the extrinsic test, i.e. that the type of artwork involved,

the materials used, the subject matter, and the setting for the subject are similar. There is, however, disagreement about whether the designs are substantially similar under the intrinsic test.

Although it is true that there are differences between defendant's plans and the Tyndale and Hannifan Lane, there are also notable similarities. The substantial similarity standard does not ask the Court to count the similarities and weigh them against the number and type of differences. The second step instead holds that, in determining substantial similarity, "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120. "Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar." *Id.* On the one hand, under the intrinsic similarity test, an "ordinary, reasonable person" could find the differences here are relatively minor and the overall forms of expression of the plans are substantially similar. On the other hand, a reasonable person could find the differences— for example, the additional garage space, placement of bedrooms, and differences in bathrooms—are significant and change the overall expression of the homes and thus, the designs are not substantially similar. Thus, there are genuine issues of material fact that preclude summary judgment on whether the home designs are substantially similar.

Also, there is a strong preference against deciding substantial similarity at the summary judgment stage. *Benchmark Homes, Inc.*, 2006 WL 994566, at *3. Here, when there are concrete examples of similarities and variations between the plans, summary judgment is particularly inappropriate. Instead, ordinary, reasonable factfinders must be able to weigh the designs to decide whether the total concept and feel of the works are substantially similar. Thus, the Court cannot find any of the designs are either substantially similar or patently dissimilar as a matter of law here.

#### 4. *Independent Creation*

Defendant also argues that even if the Court finds there is a disputed issue related to access and substantial similarity, it should still prevail as to some of the designs based on independent creation. (Doc. 35-5, at 28–29). Specifically, defendant argues the doctrine of independent creation requires the Court to grant summary judgment on the "1380 Paterson," the "8055 Autumn Hills," the "42060 Furyk," the "3010 Quimby," the "42035 Saffron," and the "42006 Haskell." (*Id.*, at 29).[4] According to defendant, it got the "42035 Saffron" plan from Family Home Plan and the "42006 Haskell" plan from Dream Home Source and Donald Gardner Architects, Inc, which prevents an infringement claim because they were copied from something other than plaintiffs' material. (*Id.*).

Plaintiffs agree that defendant may have obtained the "42035 Saffron" and the "42006 Haskell" from Family Home plans and Dream Home Source. (Doc. 40, at 28). According to plaintiffs those facts do not help defendant's case because DB partners with Family Home Plans and Dream House Source to distribute their plans and defendant essentially admitted that they copy plans. (*Id.*).

"Independent creation exists when a defendant created its own work without copying anything or if it copied something other than plaintiff's material." *Rottlund*, 452 F.3d at 732. Here, there is at least an issue of material fact whether defendant copied something other than plaintiffs' material. It is undisputed that DB advertises its works through Family Home Plans and Dream Home Source. (Doc. 45, at 9). Plaintiffs assert the two works from Family Home Plans and Dream Home Source are photocopies of the "42035 Saffron" and the "42006 Haskell." (*Id.*, at 11). Defendant disputes that they are the same designs. (*Id.*, at 12). Based on the copies contained in the record and the

---

[4] The Court has already granted judgment above on the "1380 Paterson," the "42060 Furyk," the "3010 Quimby," and the "8055 Autumn Hills" designs.

declaration of Paul Forsman, the Court finds it likely that the designs from Family Home Plans and Dream Home Source are indeed DB's designs. (Docs. 40-3, at 14; 41-3, at 13–15). There is at least a genuine issue of material fact, however, whether it is a plan other than DB's plans and the Court thus denies defendant's summary judgment on the grounds of independent creation.

### D. Pre-1990 Claims

As a final point, defendant argues that the "1380 Paterson"[5] and the "1748 Sinclair" designs are not entitled to copyright protection because they were published before the Architectural Works Copyright Protection Act ("AWCPA") was enacted in 1990. (Doc. 35-5, at 6). According to defendant, pre-AWCPA architectural technical designs and drawings were protected under the Copyright Act, but the physical design was not. (*Id.*, at 7). In other words, developers would not violate the Copyright Act if they built an identical home but would violate the Copyright Act if they made a paper copy of the plans and used it to construct a home. (*Id.*). Plaintiffs generally appear to agree and assert that infringement occurs if a design is copied and then the copied design is used to construct a house. (Doc. 40, at 10). But plaintiffs also assert that defendant copied their design when it drafted a copy of the "1748 Sinclair" design and then used that copy to build houses. (*Id.*). Plaintiffs seek the gross revenue defendant received from the design as damages. (*Id.*).

Before the AWCPA was enacted, architectural designs were protected under the Copyright Act as pictorial, graphic, and sculptural work. *Design Basics LLC v. Landmark Cmtys., Inc.*, No. 1:17-cv-449, 2019 WL 3944437, at *2 (S.D. Ohio Aug. 21, 2019). The AWCPA later extended copyright protection to include architectural plans, drawings, and the actual building itself, but works that were passed before

---

[5] The "1380 Paterson" claim was already disposed of above and need not be considered as part of this discussion here.

Case 2:19-cv-01015-CJW-MAR   Document 47   Filed 02/10/21   Page 19 of 21

December 1, 1990, were ineligible for AWCPA protection. *Id.* Architectural designs from before December 1, 1990, were protected as a pictorial, graphic, and sculptural work, but not as an AWCPA. The practical effect of this meant that copyrighted technical designs could not be copied on paper before 1990, but there was no infringement if a builder constructed a house identical to a copyrighted house so long as the builder did not make a paper copy of the design of the house and then use it to build the house.

For plaintiffs' "1748 Sinclair" design to survive summary judgment, there must be evidence that defendant physically copied the design. Plaintiffs have offered mere assertions that defendant's Jes-Zlatko (dolic)-10 construction was a copy of the "1748 Sinclair." The record indicates that the designers do not know the origin of the Jes-Zlatko design. (Doc. 35-3, at 32). Plaintiffs have offered no other evidence that defendant drafted the Jes-Zlatko design. Instead, plaintiffs rely on mere allegations that defendant drafted the design, which is insufficient to survive summary judgment. Thus, without additional evidence creating an issue of material fact about who drafted the design and whether defendant physically copied the design, the Court must grant defendant summary judgment on the "1748 Sinclair" design.

## IV. CONCLUSION

For these reasons, defendant's motion for partial summary judgment (Doc. 35) is **granted in part and denied in part**:

- Defendant's motion is granted on the unresisted design claims, including the "2285 Prairie," "1380 Paterson," "8055 Autumn Hills", "42060 Furyk", and the "3010 Quimby" designs.

- Defendant's motion is granted on the "1748 Sinclair" based on its creation and copyright before 1990 and lack of evidence of physical copying.

- Defendant's motion is denied as to the remaining designs at issue here.

20

- The Court takes no position on any of the claims or designs on which defendant did not seek summary judgment, including the Briar Manor design and the DMCA claims.

**IT IS SO ORDERED** this 10th day of February, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa